**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Lee Dover,<br><br>                     Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                     Defendant. | No. CV-13-00438-PHX-NVW<br><br>**ORDER** |

Plaintiff Donald Lee Dover seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

   **A.    Factual Background**

Plaintiff was born in November 1957 and was 52 years old on the alleged disability onset date, June 1, 2010. He previously worked as a computer repair technician, user support/help desk technician, and inventory manager. His last job was a temporary position that ended. In February 2011, Plaintiff reported that he spends his day watching television, using the computer, going to necessary appointments, eating,

and sleeping. He is able to dress, bathe, shave, care for his hair, wash dishes, and do his laundry. He feeds his dogs and gives them water. He prepares his meals by microwaving foods or eating cereal. He drives a car and goes outside one or two times a week; every other week he shops for groceries. He spends time with other people daily. He said most of his activities are limited by his pain and he has difficulty remembering things and completing tasks.

Plaintiff alleges impairment from diabetic neuropathy, neurogenic bladder, degenerative disc disease of the spine, continuing problems after bilateral carpel tunnel surgeries, sleep apnea, and depression. Although Plaintiff expressly does not allege "totally debilitating symptoms," he testified that he is unable to work a full-time job because he cannot stay awake during the day and cannot sleep at night because of frequent urination and leg cramps.

### B. Procedural History

On June 25, 2010, Plaintiff applied for disability insurance benefits, alleging disability beginning June 1, 2010. On July 9, 2012, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On August 20, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On March 4, 2013, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether

substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

### III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the

claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2013, and that he has not engaged in substantial gainful activity since June 1, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, status post surgery; status post left shoulder surgery; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine with moderate stenosis; obesity; hypertension; diabetes mellitus; status post right wrist fracture; obstructive sleep apnea; history of neurogenic bladder; and history of syncope. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally crawl and climb ladders, ropes, and scaffolds. He can frequently climb ramps and stairs, as well as stoop, crouch, and kneel. The claimant can engage in occasional overhead reaching with the left upper extremity. Further, he should avoid even moderate exposure to extreme cold.

The ALJ further found at step four that Plaintiff is capable of performing past relevant work as a help desk/user support analyst. The ALJ made alternative findings for step five of the sequential evaluation process and concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform, such as fast food worker, parking lot cashier, and storage facility rental clerk.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* at 830. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *Orn*, 495 F.3d at 632 (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may

also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The ALJ need not accept the opinion of any physician if it is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957. The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

### 2. Neurologist, Jason Reinhart, D.O., and Neuropsychologist Brian Klinck, Psy.D.

Plaintiff contends that the ALJ erred by assigning little weight to Dr. Reinhart's two opinions and to the opinion of Dr. Klinck, a neuropsychologist who performed neuropsychological testing at Dr. Reinhart's request, and instead giving greater weight to the opinions of state agency physicians. The record shows Plaintiff saw Dr. Reinhart three times and Dr. Klinck twice.

In January 2012, Plaintiff saw Dr. Reinhart for memory issues and very brief "blackouts." Plaintiff reported that he had been having memory difficulties for at least a

1  year and they had gotten progressively worse.  He also complained of momentary loss of
2  consciousness a few times.  Dr. Reinhart ordered a formal cognitive evaluation by Dr.
3  Klinck, EEG/ambulatory EEG, and brain imaging.

4  In March 2012, Plaintiff saw Dr. Reinhart for a routine follow-up visit.  Treatment
5  notes indicate the ambulatory EEG and brain imaging results were primarily
6  unremarkable and the EEG showed "rather mild left temporal dysrhythmia."  Plaintiff
7  reported having no further events.  Plaintiff's wife verified his memory difficulties and
8  said he spends time on the computer or watching television.

9  Dr. Klinck conducted a comprehensive neuropsychological evaluation of Plaintiff
10 on March 19 and 28, 2012.  Plaintiff scored 29/30 on the Mini-Mental Status Exam.
11 Plaintiff was administered the MMPI-2-RF to obtain a quantitative estimate of his current
12 personality and emotional functioning, but the results were invalid because the validity
13 profile suggested Plaintiff did not answer in an open and honest manner.  Dr. Klinck
14 concluded that the results of the comprehensive neuropsychological evaluation combined
15 with behavioral observations, medical history, and Plaintiff's report of symptoms suggest
16 Plaintiff "is likely suffering from mild cognitive defects which have occurred secondary
17 to ongoing emotional difficulties."  Dr. Klinck further reported that Plaintiff "does not
18 meet criteria for a diagnosable cognitive disorder or a progressive neurodegenerative
19 condition and his best course of treatment will involve psychotherapy to address current
20 emotional functioning."

21 In April 2012, Plaintiff saw Dr. Reinhart again for a routine follow-up visit.
22 Treatment notes indicate that the neuropsychologist reported mild cognitive deficits, but
23 no cognitive disorder on an organic basis.  Dr. Reinhart noted that Plaintiff seemed to
24 have difficulty with coping mechanisms, such as time management and planning, and that
25 he would refer him to cognitive rehab.

26 On June 18, 2012, Dr. Klinck opined that Plaintiff's mental condition mildly limits
27 his ability to perform simple tasks and moderately limits his ability to understand, carry
28 out, and remember instructions and perform complex tasks.

On June 21, 2012, Dr. Reinhart completed a Medical Assessment of Ability to Do Work-Related Physical Activities, even though Dr. Reinhart had not treated Plaintiff for any physical impairment.  Dr. Reinhart opined that Plaintiff cannot work 8 hours a day, 5 days a week, on a regular and consistent basis because of cognitive deficits and loss of consciousness.  Dr. Reinhart opined that, in an 8-hour workday, Plaintiff can sit 4–6 hours and stand/walk 3–4 hours.  He further opined that Plaintiff can lift and carry 10–15 pounds and frequently use both hands and feet, bend, crawl, climb, reach, stoop, balance, crouch, and kneel.  Dr. Reinhart indicated that Plaintiff's activities were moderately restricted with respect to unprotected heights, being around moving machinery, and driving automotive equipment, and mildly restricted with respect to exposure to marked changes in temperature/humidity and to dust, fumes, and gases.  Regarding whether there are additional symptoms that further limit Plaintiff's ability to sustain work activity for 8 hours a day, 5 days a week, such as pain, fatigue, or dizziness, Dr. Reinhart gave no response, thus indicating that Plaintiff's ability to sustain full-time work is not limited by pain, fatigue, or dizziness.

About a month later, on July 26, 2012, shortly after the July 9, 2012 administrative hearing, Dr. Reinhart completed a second Medical Assessment of Ability to Do Work-Related Physical Activities in which he said that Plaintiff suffered from cognitive deficits and loss of consciousness 365 days per year.  Regarding ancillary symptoms, he checked pain, but did not check fatigue or vertigo/dizziness.  He indicated that Plaintiff's activities were completely restricted with respect to unprotected heights, being around moving machinery, and driving automotive equipment and moderately restricted with respect to exposure to marked changes in temperature/humidity and to dust, fumes, and gases.  Dr. Reinhart rated Plaintiff's degree of restriction as "severe," defined as "extreme impairment in ability to function."

The ALJ stated she assigned little weight to Dr. Reinhart's opinions because they were inconsistent with Dr. Reinhart's findings of mild memory loss and mild temporal dysrhythmia and apparently relied substantially on information reported by Plaintiff,

1   which the ALJ found to be unreliable. These reasons are supported by substantial
2   evidence. Moreover, Dr. Reinhart's June 21, 2012 opinion indicates that Plaintiff can
3   work an 8-hour work day if sitting does not exceed 6 hours and standing or walking does
4   not exceed 4 hours, and Plaintiff can frequently use both hands and feet, bend, crawl,
5   climb, reach, stoop, balance, crouch, and kneel. It further indicates that Plaintiff's ability
6   to work is not limited by pain or fatigue. Dr. Reinhart's July 26, 2012 opinion also
7   indicates that Plaintiff's ability to work is not limited by fatigue. Thus, both of Dr.
8   Reinhart's opinions contradict Plaintiff's testimony.

9   Further, the ALJ stated she gave greater weight to the opinions of the reviewing
10  physicians for the state agency than to Dr. Reinhart's opinions because the state agency
11  opinions are well supported by medically acceptable findings and are consistent with the
12  record when viewed in its entirety. These opinions were that Plaintiff can perform less
13  than the full range of light exertion. On November 30, 2010, a state agency reviewing
14  physician concluded that Plaintiff can sit about 6 hours in an 8-hour work day, stand or
15  walk about 6 hours in an 8-hour work day, never crawl, never climb stairs or ramps,
16  never climb ladders/ropes/scaffolds, and only occasionally stoop, kneel, or crouch. He
17  further concluded that Plaintiff is limited in reaching, pushing, and pulling in both upper
18  and lower extremities. This assessment is more restrictive than Dr. Reinhart's opinions;
19  therefore, giving it greater weight benefits Plaintiff.

20  In April and May 2011, state agency reviewing physicians considered Plaintiff's
21  alleged mental impairment and physical impairments. Mary Downs, Ph.D., concluded
22  that the alleged severity of Plaintiff's mental impairment was not supported by the
23  evidence. Mental impairment posed some restrictions, but none so severe as to be
24  disabling. Michael Keer, D.O., concluded that Plaintiff can sit about 6 hours in an 8-hour
25  work day, stand or walk about 6 hours in an 8-hour work day, occasionally crawl and
26  climb ladders/ropes/scaffolds, and frequently stoop, kneel, crouch, and climb
27  ramps/stairs. He concluded Plaintiff has no manipulative limitations because he drives

and is able to use a computer. The opinions of the state agency physicians are consistent with independent clinical findings and other evidence in the record.

The ALJ stated she assigned little weight to Dr. Klinck's opinion because he did not offer any specific work limitations, the opinion is vague and imprecise, and he apparently relied heavily on Plaintiff's subjective report of symptoms and limitations. The opinion describes all of Plaintiff's limitations as mild or moderate without explanation. When asked for an opinion as to the earliest date the same level of severity existed, Dr. Klinck wrote, "Pt reports problems for the past 18 mos." In response to whether allegations of pain are consistent with clinical findings, Dr. Klinck wrote, "N/A." The ALJ's incorrect statement that Dr. Klinck met with Plaintiff once before rendering his opinion is harmless error. Although Dr. Klinck saw Plaintiff on two different days in March 2012, he conducted one assessment in two parts and never treated Plaintiff. Thus, the ALJ's reasons for assigning Dr. Klinck's opinion little weight are supported by substantial evidence. Moreover, even if the ALJ had given Dr. Klinck's opinion great weight, "mild" and "moderate" limitations do not preclude ability to function.

Therefore, the ALJ provided clear, convincing, specific, and legitimate reasons supported by substantial evidence for giving Dr. Reinhart's and Dr. Klinck's opinions little weight.

**B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found

Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

Plaintiff testified that his last job was a temporary position that ended, but if he had a job he would likely miss several days a week because he cannot stay awake during the day due to lack of sleep at night. He said he cannot sleep at night because of frequent urination and leg cramps. Plaintiff also testified that he began psychological counseling about a month before the July 9, 2012 administrative hearing. He said it was too soon to tell whether it was helping him.

The ALJ identified multiple reasons for finding Plaintiff's statements regarding the severity of his limitations less than fully credible. First, Plaintiff has not received the type of medical treatment one would expect for someone unable to perform light work with the limitations stated in the residual functional capacity. He had surgery for his carpal tunnel syndrome and acknowledged his condition was not bad enough to use splints. Plaintiff had surgery for his left shoulder, reported minimal pain subsequently, performed home exercises, and did not engage in physical therapy. At various times he reported improvement in back-related pain with conservative treatment, such as injections and aquatic therapy. He chose not to get a CPAP machine for his sleep apnea, and instead to get a dental appliance, but then testified he did not get the appliance because he could not afford it, even though his wife uses a similar machine.

Second, the ALJ noted that Plaintiff had made inconsistent statements throughout the disability process. He reported continued pain and no adverse effects from pain medications, yet chose not to take pain medications. He reported leg cramps and pain, but the medical evidence does not show diabetic neuropathy of the lower extremities or any basis for lower extremity symptoms as extreme as Plaintiff claims. Third, the ALJ found the treating physicians consistently observed that he appeared healthy and in no acute distress, and Plaintiff was able to testify at the administrative hearing without any overt pain behavior.

Fourth, the ALJ concluded that Plaintiff's daily activities were not as limited as one would expect if Plaintiff's symptoms were as severe as he claimed. The ALJ found that he "is able to care for pets, care for his own personal hygiene/grooming needs, prepare simple meals, perform household chores, drive a vehicle, go out alone, shop outside the home, pay bills, count change, handle a savings account, use a checkbook, utilize the computer, and spend time with others on a regular basis."

Substantial evidence supports the reasons stated by the ALJ for finding Plaintiff's testimony not fully credible, and substantial evidence supports finding these reasons to be specific, clear, and convincing.

### C. Plaintiff's Submission of Evidence to the Appeals Council Was Considered by the Commissioner and Does Not Establish a Basis for Reversing the ALJ's Decision.

Plaintiff contends that the Commissioner committed legal error because the Appeals Council failed to consider and address additional evidence he submitted after the ALJ's decision was issued on August 20, 2012. However, the Notice of Appeals Council Action dated January 4, 2013, expressly states that the Appeals Council considered the additional evidence listed on the enclosed Order of the Appeals Council, which identifies all six of the exhibits submitted by Plaintiff after the ALJ's decision: (1) Representative's brief dated 10/17/12; (2) Reports from Tom Virden, Ph.D. dated 6/27/12-6/29/12; (3) Reports from Midwestern University dated 9/17/12-10/1/12; (4) Reports from Metro Surgery Center dated 10/5/11-10/5/12; (5) Report from Jason Reinhart, D.O. dated 6/29/12; and (6) Report from Arizona Neurology dated 7/9/12.

Further, the Appeals Council expressly addressed the additional evidence by stating, "We found that this information does not provide a basis for changing the Administrative Law Judge's decision." The Commissioner is not required to provide a more detailed explanation. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012).

The issue Plaintiff should have raised is whether the record as a whole, which includes the additional evidence, establishes that the ALJ's denial of benefits is not supported by substantial evidence or is based on legal error. The district court must consider the entire record, including additional evidence submitted to the Appeals Council, when it reviews the ALJ's decision. *Id.* at 1163. Plaintiff does not explain how any of the additional evidence shows that, beginning June 1, 2010, he was unable to perform light work as defined in 20 C.F.R. § 404.1567(b) with the limitations stated in the residual functional capacity. *See Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (new evidence sufficient to warrant remand must bear "directly and substantially on the matter in dispute"). The Court concludes that the decision of the ALJ is supported by substantial evidence and is not based on legal error based on consideration of the entire record, including the additional evidence submitted to the Appeals Council.

Additionally, in his Opening Brief, Plaintiff cited *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010), in support of his argument regarding the Appeals Council's consideration of the additional evidence, and commented that the case is "relevant because Mr. Dover was awarded benefits within three months of the ALJ decision." He did not identify as an issue on appeal or provide legal argument regarding whether the Court should consider as additional evidence the fact that the Commissioner approved Plaintiff's second application for disability benefits with an onset date of disability of November 1, 2012. Nor did Plaintiff submit any evidence regarding the second application. The Commissioner's response brief does not address this question because it was not raised by Plaintiff.

In his Reply Brief, Plaintiff stated that "the Social Security Administration's award of benefits to Mr. Dover, with a date of disability a mere 3 months after the date of the ALJ's decision, is relevant and material evidence which would warrant a remand." He stated that the Commissioner found him not capable of performing his past relevant work due to the same medical impairments that are the subject of this claim. But the record of the second application is not in evidence before the Court, and Plaintiff has not

- 14 -

properly raised any issue regarding it.  *See* LRCiv 16.1(a) (opening brief must contain a statement of the issues presented for review, set forth in separate numbered paragraphs).

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 19th day of May, 2014.

_____
Neil V. Wake
United States District Judge